IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  08-cv-02038-ZLW-MJW

KHALIF ABDUL QAUI MUJAHID, a/k/a KEITH E. GAFFNEY,

       Plaintiff,

v.

ROBERT WILEY, Warden,
CHRISTOPHER B. SYNSVOLL, Legal Supervisor,
THERESA MONTOYA, Senior Attorney,
CARMEN DIEHL, Staff Attorney,
M. BIER, Lieutenant,
D. CLARK, Lieutenant,
LOA, Lieutenant,
GOFF, Officer, and
S. TAYLOR, Officer,

       Defendants.

---

**RECOMMENDATION ON
DEFENDANTS' MOTION TO DISMISS (Docket No. 34)
(converted to motion for summary judgment)**

---

**MICHAEL J. WATANABE
United States Magistrate Judge**

       This case is before the undersigned pursuant to an Order of Reference to United

States Magistrate Judge issued by Senior Judge Zita L. Weinshienk on February 11,

2009.  (Docket No. 15).

## PLAINTIFF'S ALLEGATIONS

       The operative pleading is the pro se incarcerated plaintiff's Second Amended

Prisoner Complaint (Docket No. 19) which is brought pursuant to 28 U.S.C. § 1331 and

Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388

(1971).  Plaintiff asserts the following in that pleading.

On March 28, 2007, while a "shakedown" was being conducted on the plaintiff's cell, defendants Montoya (a Senior Attorney) and Diehl (a Staff Attorney) went directly to the plaintiff's legal property upon entering the cell, sat on the floor, and read trial transcripts and other legal material.  They took ten legal folders of the plaintiff's legal property when they left the cell.  Montoya advised plaintiff she was writing a disciplinary report on him for having unauthorized legal material that belonged to other inmates.  Plaintiff called defendant Lt. Bier and tried to explain that Montoya took plaintiff's legal property that was regarding his co-defendants and co-conspirators on his indictment, witnesses to his case, documents that had plaintiff's name on them, and other documents related to his case.  Bier responded that he was not a lawyer and would not know if what Montoya took out of the cell was unauthorized because he did not know anything about law.  While Montoya and Diehl were in plaintiff's cell, Bier stated that he did not know why they were both staying in the cell so long and reading because the premise of the shakedown was that they were looking for weapons.  Plaintiff received an incident report the following day written by Montoya, and Bier gave plaintiff a confiscation form.

Claim One.  In Claim One, plaintiff alleges the following.  Montoya and Diehl illegally seized his legal property in violation of the Fourth Amendment.  Bier violated plaintiff's rights by being the supervisor and not conducting an institutional investigation and not sending a report to Montoya's and Diehl's supervisor to see if plaintiff's legal property was illegally seized.  Defendant Synsvoll (Legal Supervisor) failed to supervise after plaintiff sent him a personal letter letting him know how his staff members illegally

seized plaintiff's personal legal property.  However, once Synsvoll became aware of the

seizure, he returned one of the plaintiff's legal folders that contained background

information about one of the plaintiff's co-defendants.  Synsvoll failed to return the other

nine legal folders, even documents with plaintiff's name on them.  Defendant Warden

Wiley also refused to supervise or authorize an internal investigation after plaintiff sent

him a personal letter making him aware of the illegal seizure of his property.  Defendant

Lt. Clark served the incident report on the plaintiff on March 29, 2007, accompanied by

defendant Officer D. Johnson and another officer, and interviewed plaintiff.  After

plaintiff showed Clark the plaintiff's indictment, court order, letters from his attorney,

memoranda, and documents proving the legal property was plaintiff's, Clark told plaintiff

that he would call Montoya and tell her the incident report had to be dismissed.  Clark,

however, later informed plaintiff that Montoya had advised him not to dismiss the

incident report, which plaintiff states is a violation of Clark's supervisory duties.

Claim Two.  Plaintiff asserts the following in his second claim for relief.

Defendant Synsvoll violated plaintiff's due process rights because he never assigned a

supervisor to investigate plaintiff's tort claim or interview plaintiff about it.  Instead,

Sysnvoll denied the tort claim and signed the memorandum for Regional Counsel, which

plaintiff claims is a clear violation of 28 C.F.R. § 14.9.

Defendant Lt. Loa violated plaintiff's due process rights because she was

assigned to investigate plaintiff's separate tort claim about property that was stolen by

defendant Officer Taylor when she packed plaintiff's personal property on February 20,

2004, when plaintiff was taken to the special housing unit ("SHU") by defendants Lt.

Schaffer and Officer Bryant.  Schaffer had asked plaintiff to remove his watch and place

it on his bed so that Taylor could put it with plaintiff's other property.  Defendant Officer

Goff and SHU Officer Jeffords brought plaintiff his property hours later, and plaintiff's

watch and some commissary items were missing.  Goff told plaintiff he gave plaintiff

everything that Taylor packed and advised plaintiff to file a tort claim.  When contacted,

Taylor stated she packed plaintiff's watch and commissary.  Subsequently, Loa saw

plaintiff on April 15 and told plaintiff he was assigned to investigate plaintiff's tort claim

and that he would be back to see plaintiff after the interviews of Goff, Taylor, and the

witnesses mentioned in plaintiff's tort claim, but Loa never spoke with them.  Therefore,

the memorandum dated November 7, 2007, from Regional Counsel signed by Synsvoll

saying that the investigation of plaintiff's claim did not reveal that plaintiff suffered any

property loss is a violation under federal regulations because Loa never conducted any

investigation of plaintiff's tort claim.  Therefore, Taylor is liable for the plaintiff's missing

property under the Fourteenth Amendment.

Claim Three.  In his third claim for relief, plaintiff asserts the following.  Due to

plaintiff's Complaint her, the seizure of his legal property and his placement in the SHU

Unit in February and April 2007 for frivolous incident reports were "all retaliation by staff

members, and certain departments within the prison, who has [sic] personal agendas to

keep plaintiff here because of prison stigma, and label administration has placed on

plaintiff for a [sic] being a leader among inmates, because of plaintiff's 35-years of

incarceration in prison."  (Docket No. 10 at 8).  Plaintiff has been at the ADX facility

since March 1997, and because of his prison reputation, the wardens and staff there

have been labeling him the leader of D.C. inmates.  Plaintiff has been given the

opportunity several times to work his way to the "Step-Down Program" (the "Program"),

which is the only way that inmates can be transferred to another federal prison. Nevertheless, each time staff members and certain departments have undermined each Warden who has placed plaintiff in the Program and have schemed and plotted to write frivolous incident reports on the plaintiff so that he can be placed in SHU and kicked out of the Program.

On November 17, 2008, defendant Lt. Bier called one of his informants out of the unit, questioned him, and coached him to say things about plaintiff which gave Bier reasons to write a report to his supervisor and place plaintiff in SHU with no incident report. Plaintiff remained there until December 16, 2008, and was removed from the Program and sent back to a regular locked-down housing unit. Plaintiff was never interviewed by Bier or his supervisor. "This is clearly retaliation once again for me filing this complaint against the legal department, and the Lieutenants at this prison. This is cruel and unusual punishment and a violation of my Eighth Amendment to continue to go out of their way, and staff members demonstrate their personal animus, and dislike for me, and inflict mental stress, pain, and aguish by unnecessary infliction on me." (Docket No. 10 at 8).

Warden Wiley is liable because plaintiff had conversations with him about the staff having their personal feelings against the plaintiff. Wiley's failure to correct any wrongs by his staff is a violation of the plaintiff's constitutional rights.

Relief Sought. Plaintiff seeks $3,000 for his legal property, $37.40 for his watch and missing property that was taken from his cell by Taylor, and $16,962.60 in punitive damages for cruel and unusual punishment for constant harassment, placement in SHU, and retaliation. In addition, he seeks a transfer to another U.S. penitentiary and

an order directing the Warden and his administration not to retaliate against plaintiff for bringing this action.  (Docket No. 10 at 10).

## DEFENDANTS' MOTION

Now before the court for a report and recommendation is a Motion to Dismiss (Docket No. 34) which was filed by defendants Wiley, Synsvoll, Montoya, Diehl, Bier, Clark, and Goff.  Defendants Loa and Taylor apparently have not yet been served and are not represented by defense counsel of record.

In response, the plaintiff filed a document entitled  "Points and Authorities in Support of the Traverse" (Docket No. 36) in which he merely requests an "evidentiary hearing, to rebut the false statements, misinformation, and mistruths the government submitted to court in its July 27th, 2009, motion to dismiss."  9Docket No. 36 at 2).  Such hearing is allegedly necessary so that plaintiff can "argue factual arguments to show the court the inconsistencies, and false statements that they have submitted so the defendants can be held under the provisions of 28§ U.S.C. 1746, for penalty and perjury."  (Docket No. 36 at 2).  Plaintiff claims there are several factual disputes in the motion to dismiss which need to be resolved so the court can rule on the validity of the plaintiff's claims.  Furthermore, plaintiff asserts that "[a]t this time [he], would not like to submitt [sic] to the court a rebuttal declaration to show the court/government all of the false documents, and statements they submitted in their July 27th, 2009, motion, because they would have ample time to coerce other staff, and brainstorm my 'true' facts to my complaint."  (Docket No. 36 at 3).

In view of the exhibits attached to the defendants' motion, in a Minute Order entered on December 14, 2009, in accordance with Fed. R. Civ. P. 12(d), this court

converted the defendants' motion to a motion for summary judgment pursuant to Fed.

R. Civ. P. 56.  (Docket No. 37).  In addition, this court directed the parties to submit to

the court on or before January 8, 2010, any and all materials made pertinent to the

motion by Rule 56.  (Docket No. 37).  The parties did not file any submissions in

accordance with this order.  Subsequently, as directed by this court in a Minute Order

issued January 22, 2010 (Docket No. 38), defendants filed more legible copies of some

of the documents they had filed as exhibits to their motion.  (See Docket No. 39).

The court has now considered all of these motion papers as well as applicable

Federal Rules of Civil Procedure and case law.  In addition, the court has taken judicial

notice of the court's file.  The court now being fully informed makes the following

findings, conclusions, and recommendation.

Rule 56(c)(2) provides that summary judgment shall be granted "if the pleadings,

the discovery and disclosure materials on file, and any affidavits show that there is no

genuine issue as to any material fact and that the movant is entitled to judgment as a

matter of law."  Fed. R. Civ. P. 56(c)(2).  "A party seeking summary judgment bears the

initial responsibility of informing the district court of the basis for its motion, and

identifying those portions of the pleadings, depositions, interrogatories, and admissions

on file together with affidavits, if any, which it believes demonstrate the absence of

genuine issues for trial."  Robertson v. Board of County Comm'rs of the County of

Morgan, 78 F. Supp.2d 1142, 1146 (D. Colo. 1999) (citing Celotex Corp. v. Catrett, 477

U.S. 317, 323 (1986); Mares v. ConAgra Poultry Co., 971 F.2d 492, 494 (10th Cir.

1992)).  "Once a properly supported summary judgment motion is made, the opposing

party may not rest on the allegations contained in the complaint, but must respond with

specific facts showing the existence of a genuine factual issue to be tried. . . .  These

facts may be shown 'by any of the kinds of evidentiary materials listed in Rule 56(c),

except the mere pleadings by themselves.'"  Southway v. Central Bank of Nigeria, 149

F. Supp.2d 1268, 1273 (D. Colo. 2001), aff'd, 328 F.3d 1267 (10th Cir. 2003).

"Summary judgment is also appropriate when the court concludes that no

reasonable juror could find for the non-moving party based on the evidence presented

in the motion and response."  Id.  "The operative inquiry is whether, based on all

documents submitted, reasonable jurors could find by a preponderance of the evidence

that the plaintiff is entitled to a verdict. . . .  Unsupported allegations without 'any

significant probative evidence tending to support the complaint' are insufficient . . . as

are conclusory assertions that factual disputes exist."  Id.; Robertson, 78 F. Supp.2d at

1146 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); quoting White v.

York Int'l Corp., 45 F.3d 357, 360 (10th Cir. 1995)).  "Evidence presented must be

based on more than 'mere speculation, conjecture, or surmise' to defeat a motion for

summary judgment."  Southway, 149 F. Supp.2d at 1274.  "Summary judgment should

not enter if, viewing the evidence in a light most favorable to the non-moving party and

drawing all reasonable inferences in that party's favor, a reasonable jury could return a

verdict for that party."  Id. at 1273.

Since the plaintiff is not an attorney, his pleadings have been construed liberally

and held to a less stringent standard than formal pleadings drafted by lawyers.  See Hall

v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991) (citing Haines v. Kerner, 404 U.S. 519,

520-21 (1972)).  Therefore, "if the court can reasonably read the pleadings to state a

claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to

cite proper authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements. . . .  At the same time, . . . it is [not] the proper function of the district court to assume the role of advocate for the pro se litigant."  Id.

Defendants seek dismissal of the Second Amended Prisoner Complaint on the following grounds:  (1) failure to exhaust the *Bivens* claims; (2) plaintiff has failed to allege personal involvement by Wiley, Synsvoll, Bier, and Clark; (3) plaintiff has failed to state a claim; and (4) defendants are entitled to qualified immunity.

### Exhaustion

The Prison Litigation Reform Act ("PLRA"), *inter alia*, amended 42 U.S.C. § 1997e(a) to require a prisoner to exhaust "such administrative remedies as are available" before suing over prison conditions.  This exhaustion requirement "is mandatory, and the district court [is] not authorized to dispense with it."  Beaudry v. Corrections Corp. of Am., 331 F.3d 1164, 1167 n.5 (10th Cir. 2003).  Section "1997e(a)'s exhaustion requirement applies to all prisoners seeking redress for prison circumstances or occurrences."  Porter v. Nussle, 534 U.S. 516, 520 (2002).  "[T]he failure to exhaust is an affirmative defense under the PLRA, and . . . inmates are not required to specially plead or demonstrate exhaustion in their complaints."  Jones v. Bock, 549 U.S. at 216.  As an affirmative defense, exhaustion must be raised and proven by the defendants.  Roberts v. Barreras, 484 F.3d 1236, 1241 (10th Cir. 2007).

The Bureau of Prisons ("BOP") has a four-step administrative procedure for prisoner grievances codified at 28 C.F.R. §§ 542.10 - 542.19.  First, the prisoner is required to seek informal resolution of his complaint with prison staff.  28 C.F.R. §

542.13.  If the complaint is not resolved informally, the prisoner must then address his complaint to the Warden of the institution through a formal written Request for Administrative Remedy on a "BP-9" form.  28 C.F.R. §§ 542.13, 542.14.[1]  The prisoner is required to "obtain the appropriate form from . . . institution staff (ordinarily, the correctional counselor)."  28 C.F.R. § 542.14(c)(1).  This BP-9 form must be submitted no later than "20 calendar days following the date on which the basis for the Request occurred,"  28 C.F.R. § 542.14(a), but extensions may be granted.  28 C.F.R. § 542.14(b).

If the prisoner is dissatisfied with the response from the Warden, the prisoner must then submit a Regional Office Administrative Remedy Appeal to the appropriate Regional Director on a "BP-10" form.  28 C.F.R. § 542.15(a).  This BP-10 form must be submitted to the Regional Director no later than "20 calendar days of the date the Warden signed the response," but extensions may granted.  28 C.F.R. § 542.15(a).  If dissatisfied with the Regional Director's response, the prisoner must then submit a Central Office Administrative Remedy Appeal with the National Inmate Appeals Administrator in the in the Office of the General Counsel in Washington, D.C., on a "BP-11" form.  See 28 C.F.R. § 542.15.  That form must be submitted no later than "30 calendar days of the date the Regional Director signed the response," but extensions may be granted.  28 C.F.R. § 542.15(a).  The appeal to the General Counsel in the Central Office is the final step of the administrative remedy process through the BOP.

---

[1] In limited circumstances (i.e., sensitive issues, DHO appeals, Control Unit appeals, and controlled housing status appeals), the initial filing does not have to be made at the institutional level.  28 C.F.R. § 542.14(d).  In such cases, the initial filing is made to the Regional Director for the region where the prisoner is currently located.

28 C.F.R. § 542.15(a).

The administrative regulations further provide that at any stage of the administrative remedy process, a request may be rejected if the prisoner fails to comply with procedural requirements.  28 C.F.R. § 542.17(a).  When there is such a rejection, the prisoner is to be provided with a written notice explaining the reason.  28 C.R.F. § 542.17(b).  If the defect is correctable, the notice is to inform the prisoner of a reasonable extension within which to correct the defect and resubmit the request or appeal.  28 C.F.R. § 542.17(b).  If, however, the inmate is not given an opportunity to correct the defect and resubmit, the prisoner may appeal the rejection to the next appeal level.  28 C.F.R. § 542.17(c).  The Coordinator at the next level may then affirm the rejection, direct the submission be accepted at the lower level, or accept the submission for filing.  28 C.F.R. § 542.17(c).

Here, the undisputed documents submitted by the moving defendants with their motion show that the plaintiff failed to exhaust his administrative remedies with respect to all three of  the claims he raises in this action.  The documentation shows the following.

Plaintiff filed two claims under the Federal Tort Claims Act ("FTCA").  He filed one regarding the loss of his legal property, claiming First and Fifth Amendment violations, and seeking $3,000.00.  (Claim TRT-NCR-2007-5174, Docket Nos. 34-4 at 2 and 39-2).  That tort claim was denied in a  Memorandum dated October 18, 2007.  (Docket No. 34-4 at 4).  Significantly, that Memorandum advised plaintiff that "[i]f you are dissatisfied with our agency's action, you may file suit in an appropriate U.S. District Court no later than 6 months after the date of mailing of this notification."  (Docket No.

12

34-4 at 4).  Plaintiff filed another tort claim regarding the loss of his watch and commissary items, seeking $37.40.  (See Claim TRT-NCR-2007-03195, Docket Nos. 34-4 at 6 and 34-6 at 17).  That tort claim was denied in a Memorandum dated November 5, 2007.  (Docket Nos. 34-4 at 8, 34-6 at 15).  That Memorandum also advised the plaintiff that "[i]f you are dissatisfied with our agency's action, you may file suit in an appropriate U.S. District Court no later than 6 months after the date of mailing of this notification."  (Docket Nos. 34-4 at 8, 34-6 at 15).  See 28 U.S.C. § 2401(b) ("A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented."); Esposito v. United States, 368 F.3d 1271, 1274 (10th Cir. 2004)("A district court does not have jurisdiction to hear a tort claim against the United States unless the claimant files a complaint in federal court within six months after final agency decision.").  Even if this court were to construe the instant case as a FTCA action rather than a Bivens action, plaintiff did not even execute the original Prisoner Complaint until September 8, 2008 (see Docket No. 3 at 11), which was well more than six months after the two Memoranda were sent to him.  Therefore, defendants correctly assert that even if a FTCA claim had been included in that original pleading, it would have been filed months past the deadline to do so.  Furthermore, as noted by the moving defendants, the United States (not the named defendants here) would be the only proper defendant in a FTCA action.

Attached to the defendants' motion is the Declaration of Deborah A. Locke, a

13

Senior Attorney Advisor at the United States Department of Justice, BOP facilities known as the Federal Correctional Complex in Florence, Colorado.  (Docket No. 34-3). Ms. Locke explains the SENTRY database of administrative remedy complaints filed by inmates and details the administrative remedy complaints and appeals filed by the plaintiff here that relate to the claims raised in this lawsuit.  As explained in her Declaration and as established by the documents submitted, plaintiff did not exhaust his administrative remedies with respect to the claims brought here.  More specifically, plaintiff filed the following administrative remedy series relevant to the claims here.

First, in BP-9 No. 444902-F1 (See Docket No. 34-4 at 16), plaintiff complained of missing property when he was moved to SHU.  That BP-9 was denied on March 29, 2007, but plaintiff did not appeal the denial in a BP-10 or BP-11.  (See Docket No. 34-4 at 16).   According to Ms. Locke, her review reveals no other administrative remedies were filed pertaining to plaintiff's property while he was in SHU in 2007.  The Tenth Circuit has found that an inmate must appeal his grievance through all available channels to exhaust his administrative records fully.  Jernigan v. Stuchell, 304 F.3d 1030, 1032 (10th Cir. 2002) ("An inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim under PLRA for failure to exhaust his administrative remedies." ).  Plaintiff has made no showing that would justify being excused from the exhaustion requirement, such as having been prevented from filing a grievance.  See id.  Therefore, this court finds that the plaintiff did not exhaust his claim regarding his lost watch and commissary items that is contained in Claim Two of the Second Amended Prisoner Complaint.

Second, plaintiff filed BP-9 No. 449139-F1 (Docket No.39-34-4 at 24) in which

plaintiff asserted the following.  He was taken to a UDC hearing on April 4, 2007, and he asked to suspend the hearing because he did not believe he could get a fair hearing with the two hearing officers (Counselor Haygood and Case Manager Fluck) who were present.  Plaintiff had written to Synsvoll on April 1 and to Warden Wiley on April 2, asking them to view his documentation authorizing him to have his court documents that Montoya had taken out of his cell on March 28.  Fluck admitted she did not understand what plaintiff was showing her, and she was finding plaintiff guilty because Montoya is a Senior Attorney.  Plaintiff claims he could not be charged with anything unauthorized that came through the mail room.  In an attachment (Docket No. 34-4 at 25), plaintiff explained why the UDC dropped the lying charge, disputed the date and time written on the incident report, contended that Montoya violated policy by reading his legal material, and asserted that he was not given the requisite 48-hour's notice.

As correctly observed by Ms. Locke in her Declaration, in that BP-9, plaintiff did not make the BOP aware of any of the claims raised in this action against defendants Montoya, Diehl, Bier, Clark, Sysnvoll, and Wiley.  He did not claim that the removal of his legal documents violated his Fourth and Fifth Amendment rights.  In fact, it was not until part of his BP-10 449139-R1 (Docket Nos. 39-4, 34-4 at 22) that the plaintiff referenced the two attorneys reading his legal documents and staying in his cell during the entire shake-down, his providing Bier with his indictment to show Montoya that the documents she took contained names on his indictment, his showing evidence to Clark, and Clark calling Montoya.  Then, in BP-11 449139-A1 (Docket No. 39-3), plaintiff merely complained that the Regional Director did not read his appeal and just denied it and claimed the Regional Director obviously failed to review the documents provided to

15

him by the plaintiff or he would not have upheld the BP-9 response.  Plaintiff once again did not specifically discuss the activities of the named defendants.  This court thus finds that plaintiff has failed to exhaust his administrative remedies with respect to the claims he brought here in Claim One and part of Claim Two because he did not raise them through all of the steps of the administrative remedy process.

Third, plaintiff filed BP-9 No. 521467-F1 dated December 10, 2008 (Docket Nos. 34-5 and 39-7) in which he inquired into when his paperwork would be submitted for his transfer to the USP and the last stage of the Program.  Plaintiff claims in that BP-9 that on November 12, 2008, he spoke to case manager Fluck about his paperwork, but on November 17, 2008, plaintiff was placed in the SHU for investigation because other inmates were providing lies about him because the do not like him or maybe are jealous or intimidated by his presence.  Plaintiff asserted that he had done nothing wrong to be put out of the Step-Down Unit and that it seemed that he was "being pre-judged because of [his] past, and snitching inmates are fabricating stories to manipulate the administration."  (Docket No. 39-7).  In his BP-10 No. 521467-R1 (Docket Nos. 34-5 and 39-6), plaintiff challenged the rationale he was given for his placement in SHU rather than being placed in the final stage of the Program.  Then, in his BP-11 No. 521647-A1 (Docket No. 34-5), plaintiff claimed the Regional Director did not read his BP-10 and that he should be placed back in the Step-Down Unit because he was programmed appropriately.  Significantly, plaintiff did not claim in these administrative remedies any of the claims raised in this action, particularly those raised in Claim Three, such as that he was removed from the Program in retaliation for his filing the complaint in this action, that he received false incident reports as an excuse to place him in SHU, or that

Warden Wiley was aware of yet failed to correct wrong-doings of his staff.

Based upon the above, this court finds that the plaintiff did not exhaust his administrative remedies with respect to all three of his claims for relief in this case.  In the interest of judicial economy, this court will not address the additional bases for relief raised by the defendants in their motion.

**WHEREFORE,** for the foregoing reasons, it is hereby

**RECOMMENDED** that the defendants' Motion to Dismiss **(Docket No. 34)**, which was converted by this court to a motion for summary judgment, be **granted** and that the plaintiff's Second Amended Prisoner Complaint be dismissed without prejudice based upon plaintiff's failure to exhaust his administrative remedies.  It is further

**RECOMMENDED** that the plaintiff be directed to show cause why his claims against unserved defendants Loan and Taylor should not be dismissed without prejudice based upon his failure to exhaust his administrative remedies.

**NOTICE:  Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b)(2), the parties have fourteen (14) days after service of this recommendation to serve and file specific written objections to the above recommendation with the District Judge assigned to the case.  A party may respond to another party's objections within fourteen (14) days after being served with a copy.  The District Judge need not consider frivolous, conclusive, or general objections.  A party's failure to file and serve such written, specific objections waives *de novo* review of the recommendation by the District Judge, Thomas v. Arn, 474 U.S. 140, 148-53 (1985), and also waives appellate review of both factual and legal questions.**

17

**Makin v. Colorado Dep't of Corrections,** 183 F.3d 1205, 1210 (10th Cir. 1999); **Talley v. Hesse,** 91 F.3d 1411, 1412-13 (10th Cir. 1996).


Date:  February 12, 2010                    s/ Michael J. Watanabe
          Denver, Colorado                      Michael J. Watanabe
                                                         United States Magistrate Judge